Ms. Walder and Lisa Holmes v. Kimco Realty, et al. Mr. Goldstein, yes, good morning, your honors. Ben Goldstein from the law firm of Drinkwater and Goldstein. We represent the plaintiffs, Walter and Lisa Holmes, who are the appellant. I'd like to ask the court permission to reserve five minutes for rebuttal. That request will be granted. Thank you very much. Judge, the issue here deals with whether or not the Lowe's involved in this incident is more akin to a stand-alone type store or more akin to a shopping center or a mall. That's the... Yeah, that's it right there. That's the question we need to answer, right? And that's going to be a gray area? What kind of a dividing line do we adopt here? Well, I thought the most interesting case that I read on this was the KLM case dealing with the airport. When I first read that case, I realized that, of course, that they had held against liability in that case. But when you read the reasoning, it seemed quite similar to what we have here. In the KLM case, you had airline after airline after airline under the same roof. And the court said, well, we're not going to impose liability on the concourse because that's hundreds of feet away. But they would have imposed liability at the gate area. Even though it was more akin to almost a strip center with your airline, airline, airline, as you got closer to the gate of that particular airline, there would have been liability imposed. They wouldn't have said, well, we're only going to put liability on the landlord airport here. We are going to put liability on the KLM store, if you will, if you get close enough to the gate. And what happened here in the Lowe's case is that we are very close to the Lowe's. We're right on top of the Lowe's. In fact, this incident occurred in the area that Lowe's itself has sort of staked out as its parking lot. How did they stake it out? They put in these cart corrals. All right. Suppose I park in front of Lowe's and I decide I'm going to come back there later maybe. I've made up my mind. And then I walk to one of the other stores. I'm going to another store. But I happen to park in front of Lowe's for whatever reason, the parking lot's full. And I fall in front of Lowe's. What happens then? Well, first of all, we're talking about, I want to be sure we're clear, we're talking about other stores. We have... There are other stores. Well, there's two. There's Lowe's. And then there's Bally's, which is not a store. It's a fitness center. All right. A fitness center. And then way, a thousand yards away on the other side of the parking lot at the time of the incident, it's not there anymore, but at the time of the incident... It's a mattress giant. Yes. Does the record show the distance from Bally's? I don't know if it... There was argument on it, but I'm not sure that there was factual discovery on it. But there are... So someone... I show up and I park near the Lowe's in my jogging suit and I walk to the other end and I go put my order in for my mattress and then I go work out at Bally's and then I swing by Lowe's and pick up a few things. I assure you by the time... If you... Who's liable? If you slip and fracture your back in front of the Lowe's, why wouldn't Lowe's be liable no matter where you were going? All right. Same facts, except the lot was full and I didn't need anything at Lowe's and I just went to Bally's to work out. But where... Lowe's is on the hook. I parked in front of Lowe's. And you slipped in front of Lowe's? Yeah. Well, I slipped 75 feet or yards from the entrance to Lowe's in the area that you're calling the Lowe's parking lot. Okay. I think that area requires that Lowe's be responsible. Even though I've never been in a Lowe's in my life. I'm a workout, a fitness buff, and I went to Bally's. Lowe's is on the hook and Bally's is not. I don't know of any case that, respectfully, Judge, I don't know of any case that quite analyzes it that way. The analysis is... You know, you say it's 1,000 feet away or whatever you just said, you know, where do we draw the line? 500 feet, 250? Well, I think... Well, in the KLM case, they drew the line at the gate area and the area where the airline itself provides seating for people to get up and go to the gate. If I had 10 stores side-by-side, you don't dispute the fact that this would be a multi-tenant situation and I'm out in the common area of the parking lot. You wouldn't have liability there, would you, under the airline's case, right? If the 10 stores are connected, I would agree that there's no liability. Suppose they're 10 feet apart. That would be the borough's case, wouldn't it? The borough's case was a mall. Was a mall. Right. Well, clearly, there's liability for a mall under the... Yeah, forget about the mall. Excuse me. Clearly, there's no liability for a commercial tenant under a mall situation because of the borough's case. Now, suppose we separate the stores by 10 feet or 50 feet or 100 feet. Do you understand what I'm saying? It's a question of reasonableness, but when the argument is made, where do you draw the Mr. Goldstein, here's our whole dilemma here. Sure. We're in the prediction business. Yeah, right. Okay? It's good to analyze, but we're in the prediction business. We can't look at this case in an unfettered fashion. We have to look at it within New Jersey's jurisprudence. Okay, so we look at boroughs. The borough's case, which is a case that ruled against us. Right. It ruled no liability. But look at what happened in boroughs. That gentleman parked in front of a mall, and he went into the mall, and he came out of the mall, and then he fell, and he sued every store in the mall. Every single store. Well, the court's not going to impose liability on ... Don't you need to go back to Jackson and Antonucci and cases like that to try to argue that from the decisions in those cases, we can predict that New Jersey would hold that somebody similar ... that Lowe's is more similar to them than they are to boroughs? Yes, and I think we did that in our brief. In fact, the defendant ... Well, why don't you do it today? Well, I will, in answer to your question. In fact, I'll go back to Stewart, which is the first case where a commercial tenant was held to be liable for a sidewalk in front of that commercial tenant's store. What's interesting in the Stewart case is that the court specifically said, we know the sidewalk is there primarily for the use of the general public. Lots of people are walking up and down that sidewalk who don't go into the store, but we're still going to hold the store responsible because it's to the store's benefit to have that sidewalk clean because someone who's coming to that store to shop has a right to assume there'll be safe ingress and egress, even if other people use that sidewalk. We know if this were the sidewalk, if your client had fallen on the sidewalk in front of Lowe's, it's an easy case. You win. I mean, the sidewalk case is, I don't think, control here. I think you frame the issue correctly up front because, as I read the precedents, if this is a strip center, you lose. I agree. If it's a standalone tenant, you win. Correct. The difficulty we have here is this is what I think people in the industry call a big box retailer. Yes. And the new shopping center, the shopping center of the 21st century tends to be a big box retailer, not the strip center of the 1980s or maybe even 90s where you have 15 or 18 stores next to one another. That's where we are. Well, that's why Judge Kugler in the district court recognized this as a hybrid situation, if I can use his word. He called it a hybrid situation because it doesn't fit neatly into one of those other two categories. But in this court, as you indicated, in the prediction business, now has to decide what the New Jersey Supreme Court would do. New Jersey has always expanded liability. Well, I thought the trend lately, though, was to tighten it up a little. Warrington has been cabined, right? Warrington, if I remember correctly, is the case where the restaurateur was held liable for the traverse of the street by its patrons to the parking lot across the street. Right. But you could see why. Warrington has really been cabined by subsequent decisions, has it not? Not directly overruled, though. And the facts in Warrington are, in my opinion, almost extreme. I mean, they held the restaurant responsible for a man who got hit by a car crossing the street to get to the restaurant. Probably why it's been limited. Well, I mean, exactly what does a restaurant do to protect somebody from being hit by a car crossing the street?  And the reasoning of the court was, again, from the point of view of the patron. The patron has a right to expect a safe ingress and egress to that commercial establishment. True. But so even if it traversed a street... That's true. But Stewart and Warrington also made quite clear that the important public policy concern that New Jersey had was that the injured party have a remedy. Right? Well, sure. The public policy would always require it. And here, your client had a remedy. Unfortunately, I understand that the landlord is off on a technicality here, but you had, under law, assuming a timely challenge, there was a remedy against the landlord. Yeah, but I don't think liability is predicated on whether or not there may be liability against somebody else. If you're in a two-car collision... Isn't that what they said in Stewart and Warrington, though? Well, they pointed out that, look, if we don't hold this party liable for the sidewalk in disrepair, if we don't hold this person traversing, if we don't hold the restaurateur liable in Warrington, then this person's without a remedy. But the only way they got to that remedy, Your Honor, respectfully, is if they look at it through the eyes of the patron and what the patron expects. That may have been a benefit of holding it, but I don't think you can say that one person should not be liable because somebody else is. The law either makes a person liable or not. You know, one thing about Stewart, that was a decision by the New Jersey Supreme Court. So that's binding on us. Yes. The other authorities, I think, for the most part, have been ones of district court decision or the New Jersey appellate division. That's just advisory for us. And the one thing I noted about Stewart, there was exclusive possession. Wasn't there? It wasn't the situation that we have here. Wouldn't you say that was true? The part of the Lowe's parking lot designated by Lowe's with the cart corrals, I would argue, is exclusive possession of the Lowe's. Based on what? Well, just because somebody else might be able to park there doesn't mean that it's not in the exclusive possession of Lowe's. Just like in Stewart, just for the fact that the public walks across the sidewalk doesn't mean Based upon the distance to the other stores? Based upon the way the curbings and barriers are laid out? Based upon on the You mean in the Lowe's case you're asking? In this case. Based upon where they put the cart corrals. They made the determination of where their customers are likely to park and where they want to be responsible for the corrals. That was their decision. Okay. All right, we'll have you back on rebuttal. Thank you very much. Thank you. Mr. Devine? Thank you, your honors. May I introduce Chris Morgan of my office who participated in the briefing as well. May it please the court. I represent both Lowe's and Kimco. Kimco, the co-defendants, Price Legacy and David Flack, Bountiful Enterprises, the property manager, landlord, and snowplow contractor, were parties to this case. They have been dismissed on statute of limitations grounds. Plaintiff has not challenged that issue. Why doesn't Stewart apply here? Stewart does not apply here because there is not exclusive possession and control. And when you look at the Stewart holding, Judge Bantorp, it specifically indicates on what is reasonable in terms of imposition of duty. And when you have a tenant who is in exclusive control of the premises, the entirety of the parcel, from a duty perspective it is appropriate and reasonable to impose on that tenant who is in possession, not an out-of-possession landlord. But that was in 1981. And, you know, you didn't have the big box retailers in parking lots like you have Lowe's today. And, I mean, can we assume that the New Jersey Supreme Court is going to narrowly interpret what they said in 1981? Factually, you have different geometrics out there as far as shoppers are concerned. Judge, from my perspective, I believe there are two poles to consider. One is the tenant who is in complete control of the parcel, the Stewart case, so to speak. The other is a multiple tenancy situation. Whether it is a strip center, where the orientation is such that on one plane of the property you have six stores connected, or you have separate buildings on each corner of the parcel with the parking lot in the middle, that physical characteristic distinction between a strip shopping center where a rectangular parcel with the stores on one side, parking in front, in common, where the lease provides non-exclusive use rights for all the tenants, is the same as what we have been calling the big box retail situation. Quite frankly, it's just simply a different orientation of the physical buildings on that same parcel. But the part that is critical to the analysis is that it is a common parking area, that the parking area is in use for all of the tenants, that the lease provisions in the strip shopping centers... They call it common area maintenance for a reason. Yes, they do. And quite frankly, Your Honor, the commercial reality of this situation is that in these commercial common area situations, there is typically, and in this case, there is a common area maintenance charge. And what happens in a common area maintenance charge is the denominator of the cost charged back is the overall square footage of the entire parcel, and then you, as a numerator, take the percentage share of that particular tenant bearing to the whole. And the reason why I bring this up, because if there is an issue with respect to a pole or planter or pothole in front of the mattress giant, Lowe's pays for its percentage share of that. If there is an issue with respect to something in the Lowe's corner of the property, Sports Authority pays for that. All right, but you can't contract away your common law tort obligation, your negligence obligations. And isn't it true that there is a distinction as a practical matter between this scenario and the Strip Center in the sense that in the Strip Center, it would be awfully difficult to define which storefront is responsible for which series of parking spaces, whereas in this era today, when you go to a big box retailer, you know, you go park at the Lowe's, you go park at the Walmart, you go park at the Target. You don't sort of park in this nebulous area at the mall, so to speak. Once you go down the slippery slope of permitting one tenant to the exclusion of other tenants to be responsible for a portion of a common area, less than the whole of the common area, at that point, then, it becomes an exercise in drawing lines at what part in that parcel is one tenant responsible as opposed to the other. When we go back to the Stewart analysis of the New Jersey Supreme Court, and I do realize this is an eerie exercise that we are faced with here today, predicting what the New Jersey Supreme Court looked to, they looked to, in determining scope of duty, the exclusive possession and control of the tenant, and the fundamental fairness and commercial reality of putting that tenant on equal footing and having a direct responsibility for common area maintenance, because that common area maintenance served only that one tenant. In your situation, Judge, that you have posited, that is not what we are faced with. We are faced with a situation where the consumer expectation, so to speak, does not in and of itself determine the scope of the duty. Certainly that is one ingredient to consider, and the New Jersey Supreme Court has, in the Carvalho case, instructed us that it's an exercise of fundamental fairness in searching for, in my reading of the case, as a gut check as to what is fair, given the totality of the circumstances, given not only the consumer expectations, but the commercial reality of how these different entities do provide for the maintenance in those particular situations. But as a practical matter, aren't the tenants often in a position to observe a dangerous condition before the landlord does in reality? I mean, you go to a typical shopping center, you know, the landlord doesn't even have an office there, but you do have the lessees present there. Aren't they going to see the ice and snow or the icy patch or the hole that suddenly developed first? Your Honor, I would suggest to you that there's a distinction to be drawn between a tenant who is in possession and in control of the entirety of the premise. That tenant would tend to walk off and inspect the entirety to be concerned about their customer base. But why would that be the case here? Firstly, you have... And over the weekend, I was in an identical parking lot, Home Depot, and knowing this case was coming up, I looked around. And they had the cart corrals. And there that day, somebody from Home Depot was pushing the cart corrals back from the cart corral to the store. So just like what I observed, in your case, there's going to be somebody out there from Lowe's that's going to be pushing carts around, that's going to be on a regular basis, more regular than the landlord, out there in the course of the day to see whether there's ice or snow. And why doesn't that kind of scenario provide a common law duty? Well, we are searching for a duty on the facts of this particular case. That's exactly right. The facts of this particular case are that the landlord entered into a contract with a snowplow contractor. The snowplow contractor maintained an on-site premise all the time, had a 24-hour, 7-day-a-week presence and inspection responsibility there. And the commercial reality of the situation is unlike the situation where a tenant is in exclusive possession and control and may require their staff to walk off the property every shift or whatever amount of time is reasonable in that business, that is not the case in this situation because, although I appreciate that the non-delegable duty may not be contracted away, the commercial reality does bear on the issue of determining the imposition of duty in the first instance. And on the facts of this particular case, what we have is, we have Bountiful Acres who has an on-site man present who's responsible 24-7 for snow and ice removal. We have record evidence in this case from the... That's fine that you say that, but the man doesn't patrol the parking lot around the clock. Your Honor, the record evidence in this particular case is that the Bountiful Acres man applied ice and snow melt literally hours before this particular incident took place. So, while there is not a physical capability to have one man be everywhere at all times, the record in this case does demonstrate that a few scant hours before this accident took place, that an employee of Bountiful Acres actually applied ice melt or some melting agent. So, if we overturned the District Court here and sent this back and Lowe's was found liable to the plaintiffs, you would  against Bountiful Acres, would you not? Would you still have a claim against Bountiful Acres? I would have a claim against the landlord and against all of the other tenants, which is the exact situation that the Court tried to avoid in the case where we had a situation where one tenant would be found liable, but not the other. Remember, the source of the duty, in part, is the contract that provides a non-exclusive use right to all tenants. And there is a common area maintenance charge. So, to the extent there would be a liability imposed on this property, I would take the position that I am entitled to not only identification from the landlord, but I'm also entitled to identification from the other three tenants of this property in proportion of their leased space. The Court may not agree with you on that. They may not want to kick in. They may not, Your Honor, but I would certainly take that position as an advocate for Lowe's, and I would argue... But you at least would not be time-borne. I take the position that those would affect eventuality, but I would suggest to the Court that I agree with the plaintiff. This is a search for duty. What is fundamentally fair? What would the New Jersey Supreme Court do? The only New Jersey Supreme Court case that we have discussed here this morning is Stewart v. Kmart. Stewart v. Kmart was a sole possession of one parcel case. What has not been cited to this Court is any New Jersey Supreme Court held authority that stands for the proposition on these facts that there is a duty imposed on a tenant in this situation. Nor one that says there's no duty. We're really engaged in a substantial degree of guesswork here, are we not? No, Your Honor. I would suggest to you that the... You're saying that you, standing there right now, you could predict with some degree of certainty how the New Jersey Supreme Court would answer this question? I'm going to suggest to Your Honor that the Jackson decision in part indicated that they were not drawing a distinction between the owner and tenant because in that case they thought that either one would be in the best position. Jackson's a Superior Court case. From the Law Division. Right. How does Jackson shed any light on what the Supreme Court would do? Bear with me, Judge. I don't think my question reflects negatively on your position, nor do I think it reflects negatively on your opposing counsel's position. I'm just suggesting to both of you that sitting here right now, I don't have any degree of confidence what the New Jersey Supreme Court would do. Well, I think in the Stuart case, and I misspoke, Judge, I'm sorry. In the Stuart case, there was the issue of the exclusive possession and control and the Supreme Court did discuss the exclusive possession feature of that case as being important to their thought-making process in that case. And the element of the exclusive possession and control, I would suggest, can be further illustrated by the Jackson Law Division case because the point is, in that situation where one tenant is in exclusive possession of the parcel, in that case the tenant is in a position as good and better than the landlord to protect against that particular risk. The commercial reality in a multiple tenancy situation is not that. In a multiple tenancy situation, in least situations like this, this common area chargeback position where the landlord provides for it, that there's uniformity, and the other thing I would suggest to the Court as a matter of fundamental fairness and scope of duty is, to impose a duty on the tenant, the tenant would now be forced to do something that's redundant of already something they're paying the landlord to do, which certainly goes into the fundamental fairness equation of imposing a scope of duty. The tenants are paying the landlord for this exact service that, if you were to impose a non-delegable duty back on the landlord, it would be a redundant cost. Not dispositive, but a feature to think about with respect to the scope of duty to be imposed. And I would also point out to the Court that in these types of situations, the landlord and the landlord's on-site representatives are truly in the best position to provide for this. We are unfortunately faced with a situation that, because the parties who would bear a tort duty have been dismissed for reasons extraneous to our issues here today, were forced into this position. And I would just suggest to the Court that having looked at the Stewart decision, also viewing the Jackson decision as to what they thought was important on that one particular feature, I would suggest to this Court that it would be fundamentally fair, it would be wholly in keeping with the scope of duty as determined by the New Jersey Supreme Court in the Carvalho case, to hold that there is no duty imposed on a tenant in the interest of these facts. Should we consider certifying this case to the New Jersey Supreme Court? As an advocate judge, I am of the view that there is ample record evidence and ample precedent from the Stewart decision that allows this trigger to be pulled now, without that being done. That mechanism certainly exists and if necessary, I will go through that exercise with the same level of vigor. But I would suggest to the Court that there's enough now in this record with the law that we have, with the briefing that we have, for the trigger to be pulled now. Just one quick question. The B-3 of the lease has a legal description of the demised premises. Does that apply only to the No, the legal demise is the interior premises of each individual building. The common area, which is in common with the four tenants, is described as the apron, the parking lots, and those other features. And common area is a defined term in the lease. The demise is called out by both square footage and then also by a plot plan on the market. But it's the interior of each of the spaces. Mr. Devine, thank you very much. Thank you. Mr. Goldstein? Thank you. One of the things I wanted to point out before, and I guess I should mention this, about there is a lot of briefing on these contracts and these indemnity agreements and everything else. I want to be clear that it's not the plaintiff's position that there's anything wrong with these indemnity agreements or that they're invalid or anything else. It's simply our position that this is a case of tort law and therefore they don't control. Plus, I think they're irrelevant because if this is akin to a stand-alone, then there is liability and that cannot be contracted away, as Your Honor has already pointed out. If it is akin to a strip shopping center in that there is no liability, then the whole issue has become irrelevant about the contract. So I just don't think the contract has relevance. What I wanted to do is just take a moment to compare. There are two cases. One of them we talked about already, and that's Warrington, where they held the commercial tenant was responsible for its parking lot across the street. But the other one is Putterman. And in the Putterman case, this is also not a Supreme Court case, I recognize that. But in the Putterman case, the plaintiff had parked in a municipal parking lot with signage showing it was a municipal parking lot. So once again, the court looked to the reasonable expectation of the consumer and said, look, the reasonable expectation of the consumer, they're parking in a municipal parking lot, they wouldn't hold the stores responsible for the condition of a municipal parking lot, since we know it's a municipal parking lot. Now in both cases, these parking lots were not connected to the tenants. So why is one set of commercial tenants liable and the other set of commercial tenants not? Because of the reasonable expectation of the consumer and where they were. And in this case, when someone pulls into a Lowe's store with a big sign on the road that says Lowe's and sees a big box stand-alone store with car corrals with signage that say, please keep this parking lot neat, thank you, Lowe's, and the corrals are staked out and he parks within that area and goes to Lowe's, that consumer has a more than reasonable expectation that Lowe's is going to keep that parking lot in good condition. I'm still struggling with the notion of why the common law tort liability should be defined by the expectation of the invitee. Isn't that just as incorrect as defining it by the reasonable expectations of the landlord and tenant as expressed in their contract? Not if you consider the reasonable man standard to be objective, which is what we argue. The defense has put in their brief that the reasonable man type standard wouldn't work because it's subjective. Well, I agree. If it was a subjective test, it wouldn't work. But we're talking about objectively here. What would a reasonable man in the same or similar situation do? Not what did this plaintiff think. Well, a reasonable big box retailer that is paying its landlord through common area maintenance to plow and pave and otherwise maintain the parking lot, why wouldn't that reasonable retailer not do a darn thing to maintain the parking lot? Because they're already paying for it. They're paying someone else to do it. They're paying a handsome sum for that. That retailer has reasonably, legally and appropriately shifted his financial responsibility, but not his duty to the consumer that comes in. Well, you just put the rabbit in the hat. You're assuming that he has a duty. I mean, why Why would one assume a duty to maintain someone else's property? No, no. That's not the tenant's property. Where your client fell, the tenant doesn't own that property. It's not the sidewalk abutting its demise space. It's out there in the parking lot somewhere. If I implied that, then I misspoke. What I'm saying is that it's not unreasonable to put a duty on the commercial tenant based on the reasonable expectation of the consumer. Now, if the tenant then says, well, that's not reasonable from my point of view. I want to shift this financial burden that I now have somewhere else. He's perfectly fine with entering into any sort of indemnity agreement he wants. He can enter into a snow contract with a snow removal company and provide that they're bonded. The duty to a business can be summed up as a duty to inspect and repair or maintain. Now, it's somebody else's property. Judge Hardiman just pointed that out. I don't own the property. He's the landlord. Judge Hardiman owns the property. I go out and I look. Oh my god, it's slippery as heck out there. I call up Judge Hardiman. Please do something about it. He says, no, I'm not going to. What am I supposed to do at that point? I don't own the property. I think at that point you do have a duty to clean it up because you know that customers... Suppose he tells me, and don't clean it up. The last time you cleaned it up you made a mess of it. What am I supposed to do? It's not my property. I realize the example. I tell the tenant that well, we're not going to plow this week because I spent your common area maintenance charges on a trip to Atlantic City last weekend. Now that's on the tenant now? Well, actually... I own the property and it's my job to take care of it. And if your client falls on it, you sue me. It's my fault. Actually, Judge, I think that argument, truly, you just made supports my position. Because it is the tenant that's making money by inviting people to come in. If the tenant calls the landlord and says, clean it up... The landlord's making more money than the tenant, believe me. But not from people parked in that lot. Yes, from people parked in that lot. The landlord can't charge the tenant the high rent that it charges without the people parking in the landlord's lot. But that's why the duty is on both of them. The duty is on the landlord and on the commercial tenant. That's the very reason. And the commercial tenant in a multi-center, big box center like this, the commercial tenant is obliged for the entire parking lot all throughout the center. No, I think my argument... Or just the area in front of its store? Yeah, where it reasonably believes its consumers will park, and where the reasonable consumer would assume that they were parking in the lot belonging to that store. Just like the KLM case, not in the concourse, but at the gates. Okay, Mr. Goldstein, I think we understand your position. We understand yours and Mr. Devine's position. Thank you. We thank counsel for their arguments, and we'll take the matter under context.